IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00766-PSF-MEH

LORETTA RIVERS,

    Plaintiff,

v.

JAMES ALDERDEN, Larimer County Sheriff, in his official capacity;
WILLIAM P. ECKRICH, Deputy Sheriff, Individually;
SCOTT SHELLHAAS, Corporal, Individually; and
TRAVIS MATKIN, Deputy, Individually,

    Defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendants' Motion for Summary Judgment (Dkt. # 21), filed July 28, 2005. The matter is fully briefed and ripe for disposition. The Court determines that oral argument will not be of material assistance.

## I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Loretta Rivers filed this suit based on federal question jurisdiction on April 26, 2005 challenging her arrest by defendants on criminal charges of domestic violence and stalking. She brings her claims pursuant to 42 U.S.C. § 1983, as well as state tort claims under this Court's supplemental jurisdiction. Leroy Buchholz, an originally named defendant, was dismissed by order of this Court dated October 12, 2005, after the filing of a joint motion to dismiss. In addition, plaintiff's fifth claim for relief, "Conspiracy to Deprive Plaintiff of her Constitutional Rights," was also dismissed

in that order. Remaining before the Court and subject to defendants' summary judgment motion are plaintiff's claim under § 1983 violation of plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, a claim under § 1983 against the Larimer County Sheriff's Office ("LCSO") due to its alleged failure to supervise and train its officers, a claim for a violation of plaintiff's constitutional right to privacy, a claim for intentional infliction of emotional distress, and an exemplary damages "claim"[1] pursuant to state law and § 1983.

According to Ms. Rivers's complaint, at the time of her arrest James Alderden was the head of the LCSO, William P. Eckrich was a deputy sheriff for LCSO, Scott Shellhaas was a corporal for LCSO, and Travis Matkin was a deputy for LCSO. Compl. at 1-2, ¶¶ 2-5. Mr. Buchholz, no longer a party to this suit, is the former husband of Ms. Rivers. *Id.* at 2, ¶ 6.

Ms. Rivers's and Mr. Buchholz's divorce became final on August 24, 2004 in the District Court of Larimer County. *Id.* at 2, ¶ 10. In connection with the divorce proceedings, Ms. Rivers obtained a restraining order against Mr. Buchholz on the basis of her reports of physical violence and threats to kill her by Mr. Buchholz. *Id.*

Prior to the divorce becoming final, Ms. Rivers entered the marital residence in Lyons, Colorado, where Mr. Buchholz continued to live, and removed a framed picture and a rug. *Id.* at 2-3, ¶ 11, Ex. B to Defs.' S.J. Br., Incident Report, at 3. Ms. Rivers

---

[1] As noted in *Kirk v. Denver Pub. Co.*, 818 P.2d 262, 265 (Colo. 1991), under Colorado law "a claim for exemplary damages is not a separate and distinct cause of action, but rather is auxiliary to an underlying claim for actual damages and thus can be entered only in conjunction with an underlying and successful claim for actual damages assessed against a wrongdoer for a legal wrong to the injured party." (Internal quotation marks omitted).

2

claims she was still an owner of the residence at the time, *id.*, although defendants claim she had previously deeded the residence to Mr. Buchholz. Defs.' S.J. Br. at 3, ¶ 10. The entry and removal of items was apparently reported to LCSO, which began an investigation. Compl. at 3, ¶ 12. Mr. Buchholz also accused Ms. Rivers of taking $80,000 in cash from the home, an accusation he later retracted. *Id.* at 3, ¶ 13; Defs.' S.J. Br. 3-4, ¶¶ 9-12. The LCSO investigation, conducted by Defendant Travis Matkin, culminated on August 29, 2004, with charges presented to the District Attorney for second degree burglary, theft, and domestic violence. Compl. at 3-4, ¶ 15; Defs.' S.J. Br. at 13. The District Attorney's office, however, declined to file any charges against Ms. Rivers, citing insufficient evidence of criminal intent and the appropriateness of the matter for the ongoing domestic relations action. Compl. at 4, ¶ 16; Defs.' S.J. Br. at 4, ¶ 14.

On October 15, 2004, Ms. Rivers requested and received an order from the Larimer County District Court authorizing a civil standby by LCSO for October 22, 2004, while she removed the remainder of her belongings from the Lyons residence. Compl. at 4, ¶ 17. Meanwhile, on October 20, 2004, Mr. Buchholz contacted Defendant William Eckrich of LCSO and allegedly reported that Ms. Rivers was harassing him, including driving by the Lyons residence slowly, peering into his residence, and driving by the Longmont home of Mr. Buchholz's girlfriend, June Manaugh, and apparently stating to a friend of Mr. Buchholz, Christopher Margraf, words to the effect of "so this is where the bitch lives." Defs.' S.J. Br. at 4-5, ¶ 16-17; Ex. D thereto, Incident Report,

at 3-4.[2]  Mr. Buchholz told the officer that he "felt strongly that [plaintiff] was doing surveillance on himself, his house, and others working or staying at the house" 16 previous times in the preceding six to eight weeks.  Ex. D, Incident Report, at 4.

Mr. Margraf, who was staying at the Lyons residence, told Officer Eckrich that plaintiff drove by the house "slowly and looking at it as she did so" three or more times a month for the previous seven months.  Ex. D, Incident Report, at 4.  Significantly, Mr. Margraf, not Mr. Buchholz, whose credibility plaintiff claims was suspect, informed the officer that during the incident at Ms. Manaugh's Longmont home, Ms. Rivers told him that "when I get done with him [Mr. Buchholz], he[']ll have a heart attack, when I[']m through with him."  *Id.*  That was perceived as a threat, particularly given plaintiff's proficiency with and ownership of several firearms, her alleged taking 14 different medications for psychological problems and being manic depressive, and the concern that she found Ms. Manaugh's home address through her taking mail from Mr. Buchholz's mailbox.  *Id.*  Ms. Manaugh told the officer of her safety concerns in light of this incident, at which she herself had been present.  *Id.*

Ms. Rivers was not contacted as part of the investigation, Compl. at 5, ¶ 22, and she denies the allegations, claiming that she was driving by the Lyons residence only for the purpose of getting to Estes Park, as the house is located on Highway 36 (running between Lyons and Estes Park).  Rivers Aff. at 2-3, ¶ 6, attached as Ex. A to Pl.'s Resp. Br.  However, based on the information provided by Mr. Buchholz,

---

[2]  While the quote is attributed in the incident report to Mr. Buchholz, from the context it is apparent that Officer Eckrich was restating what Mr. Margraf had claimed Ms. Rivers said in his presence.

Ms. Manaugh and Mr. Margraf, Officer Eckrich "believed that a crime likely had been committed and completed an Affidavit for a Warrantless Arrest." *Id.* at 5, ¶ 18 (citing Eckrich Aff. and Ex. D, Incident Report, at 11).  Officer Eckrich then spoke with Defendant Scott Shellhaas, the officer assigned to the civil standby, to inform him of his belief that Ms. Rivers had committed the crimes of harassment-stalking and domestic violence.  Defs.' S.J. Br. at 6, ¶ 23 (citing Eckrich Aff. and Ex. D, Incident Report, at 5).  Officer Eckrich gave Officer Shellhaas the Affidavit in Support of Warrantless Arrest and booking form and asked him to arrest Ms. Rivers at the Lyons residence during the civil standby.  *Id.*

On Friday, October 22, 2004, Ms. Rivers, along with her daughter and her daughter's husband, arrived at the Lyons residence.  After removing most of her property, Ms. Rivers was arrested by Officer Shellhaas.  Compl. at 4, ¶¶ 18-20.  According to Ms. Rivers, she was handcuffed in front of her daughter and son-in-law, later removed from the patrol car in front of a group of people and placed in a different patrol car, and made to sit on a bench at the Larimer County Detention Center from 2:00 p.m. until midnight.  *Id.* at 5, ¶¶ 23-25.  Ms. Rivers contends that she did not receive any food until Saturday morning, and that jail personnel did not provide her necessary medication brought by her daughter until Saturday, and did not provide her full dosage.  *Id.* at 5-6, ¶¶ 26-27.  Meanwhile, on Saturday October 23, 2004, Magistrate Stephen Schapanski reviewed Officer Eckrich's Affidavit for Warrantless Arrest and signed a Probable Cause Determination.  Defs.' S.J. Br. at 6, ¶ 26; Ex. D, Incident Report, at 11.  Because Ms. Rivers was arrested on a Friday, she spent the

weekend in jail and did not appear in front of a judge until Monday, October 25, and was released after posting bail. Compl. at 6, ¶ 29.

According to the complaint, Officer Eckrich did not complete his incident report for the charges in support of the arrest until Wednesday, October 27, 2004. *Id.*, ¶ 30. Upon receipt of this report, the District Attorney declined to file charges against plaintiff based on insufficient evidence to show Plaintiff's driving was not for legitimate purposes and because there was no proof that Mr. Buchholz's claim of serious emotional distress was real or documentable. Ex. D, 8th Judicial District State of Colorado No File dated October 29, 2004, at 10.

Defendants move for summary judgment on the basis that plaintiff has failed to state a claim as a matter of law, that they enjoy qualified immunity from plaintiff's constitutional claims, and that they are immune from plaintiff's state claims under the Colorado Governmental Immunity Act, C.R.S. § 24-10-101 *et seq.* Defs.' S.J. Br. at 2. Defendants contend that Officer Eckrich had probable cause to charge and arrest plaintiff, that Officer Shellhaas' arrest was therefore lawful, and that in particular Officer Matkin, who investigated the theft charges against Ms. Rivers, did not participate in the arrest and therefore faces no liability. *See id.* at 12-13. Defendants also maintain that Defendant James Alderden did not fail to train or supervise the other officers, *id.* at 18-26, and that maintenance of plaintiff's criminal records is not a violation of her right to privacy. *Id.* at 20-21.

## II. STANDARD OF REVIEW

### A. Qualified Immunity

Qualified immunity protects "government officials performing discretionary functions" from individual liability in civil actions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is intended in such circumstances to "shield[] a defendant from liability" as well as "protect the defendant from the burdens associated with trial." *Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988). Once a defendant raises a qualified immunity defense, "the burden shifts to the plaintiff to meet a strict two-part test." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). First, the plaintiff must show violation of a constitutional or statutory right, and second, the plaintiff must show that the right was clearly established at the time of the conduct at issue. *Id*. If plaintiff meets this two-part test, then a defendant will "bear the traditional burden of the movant for summary judgment." *Id*.

### B. Summary Judgment

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When applying this standard, the Court reviews the pleadings and the documentary evidence in the light most favorable

to the nonmoving party.  *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).  To defeat a properly supported motion for summary judgment of the defendant, "there must be evidence upon which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank*, *N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  In addition, "'where the non-moving party will bear the burden of proof at trial on a dispositive issue' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 322).

### III.  ANALYSIS

#### A.  Unreasonable Search and Seizure

Ms. Rivers claims that defendants' actions–"accusing [her] of crimes and in securing her warrantless arrest without reasonable or probable cause to believe any crime had been committed"–violated her Fourth Amendment right to be free from unreasonable searches and seizures.  Compl. at 7, ¶¶ 38-40.  Ms. Rivers must show that this arrest violated a clearly established right at the time of the conduct at issue. In determining whether the right was "clearly established," the objective legal reasonableness of the action at the time of the alleged violation must be assessed to determine whether "the right [was] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Wilson v. Layne*, 526 U.S. 603,

615 (1999) (citations omitted). In other words, she must show that the accusations and arrest would not have been conducted by a reasonable police officer. *See Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1068 (10th Cir. 2005) ("[O]fficers are entitled to immunity if 'a reasonable officer could have believed that probable cause existed to arrest.'") (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)). This is an objective test, based upon facts available to the arresting officer at the time of the arrest. *Id.* "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988).

Defendants contend that it was objectively reasonable for Officer Eckrich to determine there was probable cause to arrest Ms. Rivers for domestic violence and stalking based on information provided by Mr. Buchholz, his girlfriend, Ms. Manaugh, and his friend, Mr. Margraf, as well as Officer Eckrich's knowledge that Ms. Rivers and Mr. Buchholz were involved in a contentious divorce and that she had previously entered the Lyons residence under questionable circumstances. *See* Defs.' S.J. Br. at 10. Ms. Rivers, citing the Larimer County District Attorney's refusal to file charges, contends that "the circumstances leading up to her arrest [were] completely lacking in probable cause to believe any domestic violence had occurred or been threatened by her." Pl.'s Resp. at 8.[3]

---

[3] Ms. Rivers does not directly address whether probable cause existed for her arrest on stalking charges, only on domestic violence charges.

The Colorado Domestic Violence statute, C.R.S. § 18-6-800.3(1), defines domestic violence as "an act or threatened act of violence upon a person with whom the actor is or has been involved in an intimate relationship." It also includes "any other crime against a person or against property . . . when used as a method of coercion, control, punishment, intimidation, or revenge directed against a person with whom the actor is or has been involved in an intimate relationship." *Id.*

Stalking is codified under Colorado law at C.R.S. § 18-9-111(b). Subsection III of that provision describes "stalking" as repeatedly following, approaching, contacting or placing under surveillance another person "in a manner that would cause a reasonable person to suffer serious emotional distress and does cause that person . . . serious emotional distress." The alleged victim need not seek professional treatment in order to show serious emotional distress, *id.*, and the behavior must occur on more than one occasion to be considered "repeated." *Id.* at (c)(IV). It is uncontested that Mr. Buchholz reported to Officer Eckrich that Ms. Rivers had driven by "a number of times," including the latest incident where she allegedly drove "slowly by and peer[ed] at the house." *See* Eckrich Aff. at 2. Mr. Buchholz further "reported that Plaintiff was proficient in the use of firearms and described several firearms she owned," and described her as being manic-depressive and taking several psychotropic medications. *Id.* at 3-4. He told Officer Eckrich that "he believed Plaintiff was capable of harming him and that he was suffering from emotional distress as a result of Plaintiff's activities." *Id.* at 4.

Ms. Rivers does not contest the facts and circumstances as understood by Officer Eckrich, *see* Pl.'s Resp. at 8.  Also, she does not point to any case law suggesting that at the time of her warrantless arrest the law was clearly established that in the face of such evidence probable cause did not exist.[4]  Rather, she points to alternative conclusions that could be drawn from the facts and circumstances, and challenges the credibility of Mr. Buchholz as a complainant.  *See id.* at 8-9.

According to the *Eckert* court, cited by Ms. Rivers in her Response at 10, "Colorado law does not assign any particular weight or hierarchy to the factors to be considered by arresting officers." 25 Fed. Appx. at 685.  Further, the District Attorney's choice to not pursue charges against Ms. Rivers is not determinative.  A police officer will not face liability for false arrest "simply because the innocence of the suspect is later established or because the suspect is ultimately acquitted or the criminal charges are dismissed." *Abouzari v. Foster*, 795 P.2d 1386, 1388 (Colo. App. 1990) (citing *Pierson v. Ray*, 386 U.S. 547 (1967) ("A policeman's lot is not so unhappy that he must choose between being charged with a dereliction of duty if he does not arrest when he has probable cause and being mulcted in damages if he does.")).  This Court cannot say that in light of all the circumstances, no reasonable officer could have believed that there was probable cause to arrest.  As the Supreme Court has held, "[t]he qualified

---

[4] Ms. Rivers does cite to one case construing the domestic violence statute, *Eckert v. Town of Silverthorne*, 25 Fed. Appx. 679 (10th Cir. 2001).  In that case, probable cause was found for a domestic violence arrest. *Id.* at 685.  Ms. Rivers claims the circumstances in *Eckert* "illustrate exactly the opposite scenario." Pl.'s Resp. at 10.  She is correct that the *Eckert* case deals with a very different scenario (an arrest after officers were called to the scene on a report of assault) and thus cannot be read to necessarily support a finding that probable cause would not exist in the circumstances at bar.

11

immunity standard gives 'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). The defendant officers here were neither. There was reason for the police to believe plaintiff made threats and had engaged in stalking. Even complainants who have diminished credibility can be crime victims, and the police do not violate alleged perpetrators' constitutional rights simply by treating their accusers' factual assertions seriously when corroborated by other information. Ms. Rivers has not met her burden to show a violation of a clearly established right, and therefore the officers are entitled to qualified immunity on her unreasonable search and seizure claim.

### B. Failure to Train

Ms. Rivers names Sheriff James Alderden in his official capacity as the representative of LCSO and claims that he is "directly liable through breach of his duty to properly train and supervise the subordinate officers," Pl.'s Resp. at 13, giving rise to a § 1983 violation. She contends that "[t]he facts alleged indicate that not once but twice the officers violated Plaintiff's constitutional rights by taking action against her without probable cause." *Id.* at 13-14.

Assuming *arguendo* for purposes of this claim that a constitutional violation occurred, Ms. Rivers must still allege facts that Sheriff Alderden breached his duty to train and supervise. Inadequate training or supervision of employees provides a basis for liability under § 1983, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come in contact."

12

*Schepp v. Fremont County, Wyo.*, 900 F.2d 1448, 1454 (10th Cir. 1990), citing to *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (brackets in original).  This deliberate indifference is found where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need."  *City of Canton*, 489 U.S. at 390.

Here, Ms. Rivers has not made the required showing.  Viewing the evidence in the light most favorable to plaintiff, she provides no evidence that LCSO acted so egregiously in its alleged failure to train officers about unfounded criminal filings or probable cause standards as to rise to the level of "deliberate indifference."  Further, Ms. Rivers has failed to present any evidence of a causal connection between her alleged violation, which this Court has not found on the merits, and the failure to train. *See McClelland v. Facteau*, 610 F.2d 693, 695 (10th Cir. 1979) (allowing § 1983 actions against supervisors "as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right").  Thus, Ms. Rivers has not met her burden to survive summary judgment on this claim.

### C. Right to Privacy

Ms. Rivers contends that the maintenance of two LCSO files, created as a result of the theft allegations and the warrantless arrest, violates her right to privacy "by casting her in a false light, potentially harming her reputation or ability to earn income or enter contracts," giving rise to a § 1983 claim.  She wants these records expunged.  Compl. at 9.  To determine whether public availability of such information

constitutes an unconstitutional intrusion on fundamental aspects of personal privacy, a court must consider the following: (1) whether the complaining party has a legitimate expectation of privacy; (2) whether the disclosure serves a compelling state interest; and (3) whether disclosure can be made in the least intrusive manner. *Nilson v. Layton City*, 45 F.3d 369, 371 (10th Cir. 1995). However, an individual does not have a legitimate expectation of privacy for information that is not "highly personal or intimate." *Livsey v. Salt Lake County*, 275 F.3d 952, 956 (10th Cir. 2001).

Arrest records along with information contained in police reports have been generally held not to implicate the right to privacy. *See Nilson* 45 F.3d at 372 (no legitimate expectation of privacy in criminal record that was expunged and later revealed); *Flanagan v. Munger*, 890 F.2d 1557, 1570-71 (10th Cir. 1989) (no legitimate expectation of privacy in public disclosure of police internal investigation files). Here, the arrest records and police reports appear to have been regularly kept, their contents reasonably related to the issues raised by third parties, and did not contain highly personal or intimate information about plaintiff. In any event, it is the recorded accusations directed against Ms. Rivers, not unrelated personal details about her, that form the gravamen of this claim. Under these circumstances, Ms. Rivers has failed to establish a constitutional violation of her right to privacy.

### D.  Intentional Infliction of Emotional Distress

Defendants claim that Ms. Rivers's state law claim for intentional infliction of emotional distress is barred by the Colorado Governmental Immunity Act ("CGIA"), C.R.S. § 24-10-101 *et seq*. Plaintiff does not challenge applicability of the CGIA, and

instead argues that disputed facts exist as to defendants' claimed "benign" intent and therefore "to dismiss Plaintiff's claim for intentional infliction of emotional distress on summary judgment is not consistent with the case law." Pl.'s Resp. at 12-13.

"The CGIA establishes immunity from tort actions for public entities and employees who are acting within the course and scope of their employment." *Podboy v. Fraternal Order of Police*, 94 P.3d 1226, 1228 (Colo. App. 2004). The CGIA provides an exception, however, for conduct which is "willful and wanton." C.R.S. § 24-10-118(1). Although "willful and wanton" is not defined in the CGIA, courts borrow the definition from Colorado's exemplary damages statute: "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Cossio v. City and County of Denver*, 986 F. Supp. 1340, 1349 (D. Colo. 1997) (citing Colorado state and federal cases). Here, the Court has determined that defendants were not unreasonable in determining that probable cause existed to arrest Ms. Rivers, and the relevant disputed facts listed by Ms. Rivers, viewed in the light most favorable to her, are insufficient to raise a genuine issue of material fact as to whether defendants acted willfully or wantonly. *See e.g. Cossio*, 986 F. Supp. at 1350 (although a jury could find police officer's conduct to be negligent, "[p]laintiffs have not met the requirements of Rule 56 to create a genuine issue of fact" as to whether officer acted willfully and wantonly).

### E. Willful and Wanton Conduct

Because the Court finds that defendants were not unreasonable in finding probable cause to arrest Ms. Rivers for domestic violence and stalking, and that plaintiff failed to create a genuine issue of material fact as to willful and wanton conduct for purposes of avoiding the CGIA, there is no basis for her claim that "[i]ndividual defendants' conduct was willful and wanton . . . entitling [her] to exemplary damages under state law, and under federal law pursuant to 42 U.S.C. § 1983." Compl. at 8. Although punitive or exemplary damages may be available in a "proper" § 1983 suit, *see Carlson v. Green*, 446 U.S. 14, 22 (1980) (quoting *Carey v. Piphus*, 435 U.S. 247, 257 n.11 (1978)), in the absence of a demonstrated constitutional violation there is no basis for any damage award, much less one for punitive or exemplary damages. *See Carey*, 435 U.S. at 257 n.11.

### F. Conditions of Confinement

Ms. Rivers's complaint asserts facts related to her confinement in the Larimer County Detention Center over the weekend following her arrest, including a failure to provide required dosages of necessary medication and a deprivation of food. Compl. at 5-6, ¶¶ 26-27. However, these facts are not asserted in the form of any claim for relief, such as a due process violation under the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Olsen v. Layton*, 312 F.3d 1304, 1315 (10th Cir. 2002) (treating claims of unconstitutional conditions of confinement during pretrial detention under the Fourteenth Amendment's Due Process Clause, not the Eighth Amendment). However, even if Ms. Rivers did include a claim for relief based on these

alleged facts, in the absence of any specific injury, the alleged circumstances of deprivation do not rise to the level of a constitutional violation.

## IV.  CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment (Dkt. # 21) is GRANTED.  The Clerk of the Court is directed to enter judgment for the defendants.

DATED: March 17, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge